UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL DESHON MATTHEWS,

          Petitioner,

v.

JOHN DAVIDS,

          Respondent.
_____/

Case No. 1:19-cv-310

Honorable Janet T. Neff

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Michael Deshon Matthews is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of (1) first-degree murder, in violation of Mich. Comp. Laws § 750.316; and (2) possession of a firearm during the commission of a felony (felony firearm), in violation of Mich. Comp. Laws § 750.227b. On October 21, 2016, the court sentenced Petitioner to life imprisonment on the first-degree murder conviction, and two years' imprisonment on the felony firearm conviction, with the prison terms to be served consecutively.

On April 18, 2019, Petitioner filed his habeas corpus petition. The application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on April 18, 2019. (Pet., ECF No. 1, PageID.11.)

The petition raises four grounds for relief, as follows:

    I.       DID [THE] TRIAL COURT ERR IN DENYING [PETITIONER'S] MOTION FOR SUBSTITUTE COUNSEL IN VIOLATION OF THE UNITED STATES AND MICHIGAN CONSTITUTIONS?

    II.      WAS [PETITIONER] DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL WHERE HE WAS ARRESTED ON OR ABOUT NOVEMBER 22, 2015 AND TR[IA]L BEGAN ON SEPTEMBER 28, 2016?

    III.     DID THE TRIAL COURT ERR IN ASSESSING [PETITIONER] $1,200 IN COURT COSTS?[1]

    IV.     DID THE TRIAL COURT ABUSE ITS DISCRETION IN ORDERING $7,005[]IN RESTITUTION? [2]

(Pet., ECF No. 1, PageID.5-6, 8-9.) Respondent has filed an answer to the petition (ECF No. 10), stating that the grounds should be denied because Petitioner has not exhausted state remedies for all grounds, the grounds are not cognizable, or the grounds lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are lacking in merit. Accordingly, I recommend that the petition be denied.

## Discussion

**I.**    **Factual allegations**

In addressing Petitioner's appeal, the Michigan Court of Appeals summarized the basic underlying facts:

> In the early morning hours of November 22, 2015, [Petitioner] and several other individuals went to a nightclub in Detroit. Although they were permitted to enter, [Petitioner] and one of these individuals, Joshua Simpson, were later forcibly removed from the club by security. Their subsequent efforts at reentry were rebuffed. Thereafter, [Petitioner] asked Simpson for Simpson's handgun.

---

[1] Other documents, including those Petitioner attached to his petition, suggest the trial court imposed court costs of $1,300 rather than $1,200. For the purposes of this report and recommendation, the amounts are inconsequential.

[2] Likewise, other documents suggest that the trial court imposed restitution of $7,500 rather than $7,005.

> [Petitioner] walked to the front door of the club and again asked to enter. When the door opened, [Petitioner] reached in and shot a security guard, Darryl Jeter, Jr., in the head, killing him. Most of these events were captured on surveillance footage taken by an exterior camera.
>
> [Petitioner] was arrested later that day, and Clifford Woodards II was appointed to represent him in this matter. Trial was initially scheduled to begin on April 20, 2016. However, trial was delayed for reasons that will be discussed later in this opinion, and did not begin until September 28, 2016. Between his arrest and trial, [Petitioner] sent multiple letters to the trial court. These letters generally had two themes: (1) that [Petitioner] was unhappy with Woodards and wanted a new attorney appointed to handle the case, and (2) that [Petitioner] believed his right to a speedy trial was being violated by the length of time he remained in custody before trial.
>
> When the trial began, two juries were selected, one to decide the charges against [Petitioner], and the other to decide the charges against Simpson. However, before the trial court began taking evidence, Simpson pleaded guilty to second-degree murder, MCL 750.317, and felony-firearm. [Petitioner] rejected the prosecutor's final plea offer, and his case proceeded before the jury. After hearing the evidence, the jury found [Petitioner] guilty of first-degree murder and felony-firearm.
>
> The trial court sentenced [Petitioner] to the terms of imprisonment stated at the outset of this opinion. The trial court imposed court costs of $1,300, but did not articulate a factual basis for the imposition of these costs. The trial court also ordered [Petitioner] to pay $7,500 in restitution to Jeter's mother as reimbursement for Jeter's funeral expenses. The amount of these expenses was derived from [Petitioner]'s presentence investigation report (PSIR), which stated that the family had incurred funeral expenses in this amount, and that documentation would be provided at sentencing to support the figure. While no such documentation was presented at sentencing, [Petitioner] raised no objections to the restitution order, and never requested any documentation or other proof of the amount.

*People v. Matthews*, No. 336121, 2018 WL 1122065, at *1 (Mich. Ct. App. Mar. 1, 2018) (footnotes omitted).

Petitioner, with the assistance of counsel, appealed his conviction raising the same issues he raises in this Court. (Pet'r's Br., ECF No. 1-1, PageID.25.) The Michigan Court of Appeals affirmed the convictions but remanded to establish factual bases for the amount of restitution and court costs. *Id.* at *7.

3

On March 30, 2018, while awaiting a hearing in the trial court, Petitioner applied pro per for leave to appeal the court of appeals decision to the Michigan Supreme Court. (ECF No. 11-11, PageID.314.) In his application to the Michigan Supreme Court, Petitioner raised the same first three issues he raises in this Court. (*Id.*, PageID.316, 319, 322.) On September 12, 2018, the Michigan Supreme Court denied Petitioner's application for leave to appeal. (*Id.*, PageID.313.)

On November 15, 2018, after the state supreme court denied Petitioner's application, the trial court held a hearing to establish the factual bases for the court costs and restitution it had imposed with the conviction. (ECF No. 12-1, PageID.388.) The trial court affirmed the $1,300 in court costs but eliminated the $7,500 in restitution because it lacked detailed documentation to explain the figure.[3] (Post-conviction Hr'g Tr., ECF No. 12-1, PageID.390-392.)

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

---

[3] The trial court left open an opportunity to reinstate the restitution upon submission of evidence justifying the amount. (*See* Post-conviction Hr'g Tr., ECF No. 12-1, PageID.391-392.) However, the record before this Court lacks any indication that the restitution was subsequently reinstated.

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue a state court made is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Substitute Counsel

Petitioner alleges that his right to counsel under the Sixth Amendment was violated because the trial court denied his request for substitute counsel without adequately establishing the factual bases for his request.

Petitioner wrote several letters to the trial court alleging several issues that he had with his counsel and requesting a substitution. In Petitioner's first letter dated February 18, 2016, he alleged that his counsel "had a personal relationship" with the victim and "was working with the prosecutor to sabotage [Petitioner] with a 'fabricated video' and with 'witnesses that can't place [Petitioner] at the scene.'" *Matthews*, 2018 WL 1122065, at *2. At a pre-trial hearing on March 11, 2016, when the trial court asked "if everything had been 'squared away' between [Petitioner] and [his counsel,]" Petitioner responded, "Yes." *Id.* Petitioner further consented to his counsel's efforts to negotiate a plea agreement. After the March 11, 2016 hearing, but before the final pre-trial conference, Petitioner wrote several more letters to the trial court complaining that his counsel did not respond to his questions, was "ineffective," and "did not have [Petitioner's] 'best int[e]rest in heart.'" *Id.* at *3. Petitioner further alleged that his counsel was "'hired by the victim[']s

6

family," claiming his counsel was "a retained lawyer" whom Petitioner had not hired. *Id.* At the final pre-trial conference, the trial court asked Petitioner's counsel to respond to the allegations. Petitioner's counsel explained to the trial court that he and Petitioner had difficulty resolving a disagreement about the identity of an individual in a security video, but Petitioner's counsel remained confident that they could work out any disagreement. After listening to counsel's explanation, the trial court explained to Petitioner that he had not provided any reason to substitute counsel. The court therefore denied Petitioner's request.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'" *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing

"the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

Although the Michigan Court of Appeals cited only Michigan cases in its analysis on this claim, the standard it applied inquired whether Petitioner had established that there was good cause to substitute counsel:

> "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v. Strickland*, 293 Mich. App. 393, 397; 810 N.W.2d 660 (2011) (quotation marks and citations omitted).
>
> As this Court explained in *Strickland*:
>
>> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Id.* (quotation omitted).]

*Matthews*, 2018 WL 1122065, at *2.

On appeal, Petitioner alleged that the trial court abused its discretion because it "did nothing to determine whether . . . there were irreconcilable differences between [Petitioner] and his counsel." (Ex. 1 Supp. Pet., ECF No. 1-1, PageID.41.) The Michigan Court of Appeals found Petitioner's argument unpersuasive because the trial court heard from Petitioner through his multiple letters as well as from his counsel at pre-trial hearings. The court of appeals continued, "[t]o the extent [Petitioner] believes more factual development was necessary, it was incumbent on him to request a hearing. [Petitioner] did not request any such hearing, and cannot now complain that the trial court failed to investigate the matter further." *Matthews*, 2018 WL 1122065, at *3. Indeed, Petitioner cannot demonstrate that the trial court should have inquired more

8

extensively into Petitioner's request for substitute counsel because "the clearly established law does not indicate that the trial court had a duty to conduct a good cause inquiry before determining whether to grant or deny" Petitioner's request. *Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012). Thus, this determination by the court of appeals was not unreasonable.

Likewise, Petitioner has not established that the court of appeals was unreasonable when it determined the allegations he made against his counsel failed to provide good cause for substitute counsel. The court of appeals determined that the allegations from Petitioner's letters failed to establish good cause for substitute counsel because the allegations either had been resolved, had been found to be factually false, or had been had been too general and unsupported.

The court of appeals' holding that Petitioner's earliest allegations—those before the March 11, 2016, hearing—had been resolved is not unreasonable. After making these early allegations, Petitioner later confirmed to the trial court they had been "squared away." *Matthews*, 2018 WL 1122065, at *2. Thus, the court of appeals was entirely reasonable in determining that the allegations before the March 11, 2016 hearing failed to establish good cause to warrant substitution of counsel.

Petitioner fares no better in his later allegations. Petitioner arguably alleged grounds to establish good cause for substitution of counsel when he asserted that his counsel had been retained on his behalf by the victim's family. However, the court of appeals found that Petitioner's counsel had been appointed not retained. *Id.* at *3. Petitioner does not challenge any of the facts relied upon by the Michigan Court of Appeals as beyond the record nor does he provide any new information to support his allegation. Thus, Petitioner fails to point to any evidence, much less clear and convincing evidence, to displace the State court's factual finding that his counsel had

9

been appointed.  *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531.  As a result, the court's finding was not unreasonable.

The Michigan Court of Appeals determined that Petitioner's remaining allegations were too general and or were otherwise unsupported:

> Other than this claim, defendant alleged to have filed a grievance against Woodards, but gave no reason for the grievance.  Defendant stated that Woodards was ineffective, but without any further elucidation.  Defendant also generally complained that Woodards did not have his best interests at heart and did not respond to unspecified inquiries.  As this Court has explained, "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause.  Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Strickland*, 293 Mich. App. at 398 (citations omitted).  Defendant's complaints regarding Woodards "lacked specificity and did not involve a difference of opinion with regard to a fundamental trial tactic." *Id.*  We note that "neither [defendant's] complaints nor his filing of a grievance established good cause for the appointment of new counsel." *Id.* at 397-398.  As such, we have no basis for making a finding that defendant received ineffective assistance of counsel.

*Matthews*, 2018 WL 1122065, at *3.  Petitioner's allegations fail to demonstrate "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with [his] attorney in order to warrant substitution."  *Morris v. Stewart*, No. 17-1478, 2017 WL 9248729, at *1 (6th Cir. Nov. 15, 2017) (citing *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011); *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)).  The Michigan Court of Appeals determination on these allegations was not unreasonable.

Thus, Petitioner has failed to show that the court's determination regarding denial of substitute counsel "was contrary to, or involved an unreasonable application of, clearly established Federal law" or that it resulted from "unreasonable determination of the facts."  28 U.S.C. § 2254(d)(1)-(2).  Consequently, Petitioner is not entitled to habeas relief on this ground.

## IV.    Speedy Trial

Petitioner alleges that he was deprived of his right to a speedy trial in violation of the Sixth Amendment because 10 months elapsed between his arrest and his trial.  Petitioner's contention that his convictions were unconstitutional because of a "speedy trial" violation falls short under the AEDPA standard.

In *Brown v. Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit reviewed the clearly established federal law with respect to the constitutional requirement for a speedy trial:

> The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  These rights apply to the states through the Fourteenth Amendment. *Klopfler v. North Carolina*, 386 U.S. 213, 223 (1967).  The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7-8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966).  The sole remedy for a violation of the speedy-trial right is dismissal of the charges.  *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).
>
> In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.  No one factor is dispositive.  Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

*Brown*, 845 F.3d at 712.

The Michigan Court of Appeals' analysis expressly applied the *Barker* four-factor test:

> We begin with the last element, prejudice.  Again, this is a "critical" part of the analysis.  [*People v. Cain*, 605 N.W.2d 28, 238 Mich. App. 95, 112 (1999).] Because the time between defendant's arrest and his trial was well under 18 months, prejudice is not presumed, and the burden is on defendant to prove that he suffered prejudice. *Id.*  There are two types of prejudice recognized in a speedy trial claim: "prejudice to the person and prejudice to the defense." *People v Gilmore*, 222 Mich App 442, 461-462; 564 NW2d 158 (1997).

> As our Supreme Court has explained, "[p]rejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006) (quotation marks and citations omitted). In this case, defendant does not even attempt to argue that he suffered prejudice to his defense, nor is any such prejudice apparent from the record. There is no evidence that the roughly 10 months that passed between defendant's arrest and his trial caused any evidence to go missing, any witnesses to be lost, or otherwise affected defendant's ability to present a defense.
>
> Defendant only argues that he suffered personal prejudice. He first cites . . . from *United States v Marion*, 404 US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971)[.]
>
> * * *
>
> Defendant then explains that his "repeated attempts to inform the trial court that he wanted to be brought to trial implicates the personal prejudice discussed in *Marion*. The fact that [defendant] had been assigned counsel and was compelled to write letters to the judge underscores this point."
>
> "General allegations of prejudice are insufficient to establish that a defendant was denied the right to a speedy trial." *People v Walker*, 276 Mich App 528, 544-545; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008). All defendant has done is conclusively assert, without any basis in fact, that he suffered the type of prejudice discussed in *Marion*. His letters similarly raised only general concerns regarding his inability to be with his family while he was incarcerated. On this record we conclude that defendant has failed to demonstrate prejudice.

*Matthews*, 2018 WL 1122065, at *4-5 (footnotes omitted).

The Michigan Court of Appeals continued its analysis through each of the remaining *Barker* factors. Regarding the length of delay, the court of appeals determined that "[a] 10-month delay is not exceptionally long." *Id.* at *6. As for the causes of the delays commencing Petitioner's trial, the court of appeals found that some of the delays were due to Petitioner's trial counsel, and of those "attributable to the prosecution as a technical matter, it does not appear that any delays that could be charged to the prosecutor were unreasonable." *Id.* The court of appeals held that both the length and cause of delay factors weighed against Petitioner. The court held that on

12

*Barker*'s third factor, Petitioner's assertion of his right to a speedy trial, the factor weighed in favor of Petitioner. Nonetheless, the court of appeals rejected Petitioner's speedy trial claim. *Id.*

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *Cain*, 238 Mich. App. at 112; *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law. *Cain*, 238 Mich. App. at 112 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).[4] Thus, it cannot be said that the state courts applied the wrong standard in evaluating Petitioner's "speedy trial" claim.

The *Barker* Court acknowledged that its test was a flexible balancing test and, thus, "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529-30. The flexibility of the test has significant implications for this Court's review under the AEDPA standard. "'The more general the rule at issue'—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in

---

[4] Although the state courts apply the clearly established federal law, the *Barker* test, to evaluate "speedy trial" claims, they apply it a little differently than the federal courts. The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 238 Mich. App. at 112. The federal courts, however, eschew such a "bright-line rule." *Brown*, 845 F.3d at 717. Instead, the federal "courts must conduct a functional analysis of the right in the particular contest of the case." *Id.* (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 522)) (internal quotation marks omitted). This is a difference between the federal and state applications of the test, but the difference does not render the state court's application unreasonable or contrary to *Barker*. *See, e.g., Brown v. Bobby*, 656 F.3d 325, 329-330 (6th Cir. 2011) (court concluded Ohio's use of a 270-day rule was not "contrary to" *Barker*).

reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766. 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Michigan Court of Appeals' balancing of the four factors does not appear to be unreasonable. The length of delay in this instance was not remarkable. "[A] delay is presumptively prejudicial when it approaches one year." *United States v. Gardner*, 488 F. 3d 700, 719 (6th Cir. 2007). Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). Certainly, the conclusion of the court of appeals that prejudice cannot be presumed from a ten-month delay is not unreasonable.

The Michigan Court of Appeals and trial court hearing transcripts indicate that the delays bringing Petitioner to trial were largely due either to the unavailability of Petitioner's counsel or to delays sorting out issues with Petitioner's co-defendant. Although "[a] deliberate attempt to hamper the defense should be weighted heavily against the government . . . , [a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . ." *Barker*, 407 U.S. at 531. The court of appeals concluded that any delays in Petitioner's case attributable to the prosecution were not unreasonable. The court of appeals' determination is itself not unreasonable.

With regard to the third factor, the court of appeals determined that "[Petitioner] did assert his right to a speedy trial on multiple occasions, albeit somewhat informally." *Matthews*, 2018 WL 1122065, at *6. Petitioner wrote multiple letters to the trial court informing how long he had been in custody, asking that his case be dismissed on speedy trial grounds, and that he should be

14

brought to trial. The court of appeal determined that, "[a]t least arguably, this factor weights in favor of [Petitioner]." *Id.* The court of appeals' conclusion on the third factor was not unreasonable.

Finally, with respect to prejudice, the *Barker* Court identified three specific categories of harm that might accrue to a pretrial detainee because of undue delay in proceeding with trial: "(i) . . . oppressive pretrial incarceration; (ii) . . . anxiety and concern of the accused; and (iii) . . . the defense [could] be impaired." *Barker*, 407 U.S. at 532 (footnote omitted). The court of appeals acknowledged that Petitioner had remained detained for the 10 months leading up to his trial, and that he had made allusions and conclusory allegations relating to anxiety resulting from his detention. Nonetheless, the court of appeals also noted that Petitioner had failed to identify how his defense was impaired in any respect.

After balancing the factors, the court of appeals rejected Petitioner's speedy trial claim because holding otherwise would "be a conclusion that [Petitioner's] right to a speedy trial was violated simply because he wrote several letters raising the issue, as that is the only factor weighing in his favor." *Matthews*, 2018 WL 1122065, at *6. Whether this Court would weigh the factors the same way is immaterial. All that matters is whether Petitioner has shown that the court of appeals' determination was objectively unreasonable. He has failed to make that showing. To the contrary, the state court's factual determinations and its application of the *Barker* test, the clearly established federal law, were reasonable. As a consequence, Petitioner is not entitled to habeas relief on this ground.

**V.     Court Costs and Restitution**

Petitioner challenges the trial court's assessment of court costs and restitution. However, Petitioner's final two claims are not cognizable on habeas review. In *Washington v. McQuiggin*,

529 F. App'x 766 (6th Cir. 2013), the Sixth Circuit Court of Appeals considered the limits of habeas jurisdiction with regard to orders to pay fines or restitution. The court explained that under Section 2254 subject matter jurisdiction exists only for claims that a person is "in custody" in violation of the Constitution or laws of the United States. *Washington*, 529 F. App'x at 772-773 (citing *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000) (quoting 28 U.S.C. § 2254(a)). Orders compelling the payment of fines or restitution, therefore, "fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim." *Id*. at 773; *see also United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that Section 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 Fed. App'x 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under Section 2254 and citing *Watroba*, 56 F.3d at 29); *Kennedy v. Nagy*, No. 18-1463, 2018 WL 3583212, at *2 (6th Cir. July 12, 2018) ("Kennedy argues that the trial court erred by ordering him to pay restitution, court costs, and attorney's fees without first considering his financial situation …. [T]hese claims are not cognizable in a federal habeas proceeding because noncustodial punishments do not satisfy the 'in custody' requirement of § 2254."). That a petitioner might be subject to a custodial penalty does not make available to him collateral relief from a noncustodial punishment such as an order to pay fines or restitution. *Washington*, 529 F. App'x at 773.

In addition to restitution, Petitioner has been ordered to pay court costs, which are neither restitution nor fees. In *Washington*, the noncustodial penalty at issue was not an order to pay fines or restitution either—it was an order to pay attorney's fees. That difference, however, did not make Washington's claim cognizable on habeas review:

> For habeas purposes, it is difficult to distinguish—and Washington does not attempt to distinguish—an order imposing attorney's fees from a fine or restitution order. Although the question of whether a claim satisfies the "in custody" requirement is to some extent one of degree, *Nelson v. Campbell*, 541 U.S. 637, 646 (2004), a fee-

16

> repayment order falls outside of even "the margins of habeas," *id.*, because it is "not a serious restraint on . . . liberty as to warrant habeas relief." *Tinder*, 725 F.2d at 805; *Bailey*, 599 F.3d at 979 (quoting *Tinder*).

*Washington,* 529 F. App'x at 772-73. For the same reasons, Petitioner's habeas challenge to the costs imposed upon him is without merit because it is outside the scope of the federal habeas statute.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: May 7, 2020                                                  /s/ Sally J. Berens
                                                                                                             SALLY J. BERENS
                                                                                                             U.S. Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).